ELECTRONICALLY FILED - 2023 Apr 20 4:14 PM - ORANGEBURG - COMMON PLEAS - CASE#2023CP3800559

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF ORANGEBURG<br><br>Bennie H. Brickle III,<br><br>Plaintiff,<br><br>v.<br><br>Department of Public Utilities at the City of Orangeburg,<br><br>Defendant. | IN THE COURT OF COMMON PLEAS<br>FIRST JUDICIAL CIRCUIT<br><br><br><br>**SUMMONS** |

TO THE DEFENDANT ABOVE NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is served upon you, and to serve a copy of your answer to this Complaint upon the subscriber at the address shown below within thirty (30) days (thirty five (35) days if served by United States Mail) after service hereof, exclusive of the date of such service, and if you fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

**CROMER BABB PORTER & HICKS, LLC**

BY: *s/Chance Sturup*

Julius W. Babb, IV (#77216)
jay@cbphlaw.com
Chance Sturup (#105647)
chance@cbphlaw.com
1418 Laurel Street, Ste. A (Street Address)
Post Office Box 11675
Columbia, South Carolina 29211
Phone: 803-799-9530

***Attorneys for Plaintiff***

April 20, 2023
Columbia, South Carolina

ELECTRONICALLY FILED - 2023 Apr 20 4:14 PM - ORANGEBURG - COMMON PLEAS - CASE#2023CP3800559

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF ORANGEBURG<br><br>Bennie H. Brickle III,<br><br>Plaintiff,<br><br>v.<br><br>Department of Public Utilities at the City of Orangeburg,<br><br>Defendant. | IN THE COURT OF COMMON PLEAS<br>FIRST JUDICIAL CIRCUIT<br><br><br>**COMPLAINT**<br>(Jury Trial Demanded) |

**EMPLOYMENT CASE**

Plaintiff, Bennie H. Brickle III, complaining of the Defendant herein, respectfully alleges the following:

**PARTIES & JURISDICTION**

1. Plaintiff, Bennie H. Brickle III (hereinafter "Plaintiff"), is a citizen and resident of Clarendon County, South Carolina.

2. Defendant, Department of Public Utilities at the City of Orangeburg (hereinafter "Defendant"), is a local municipal entity located in Orangeburg County, South Carolina.

3. This action arises under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, as well as the statutory and common law of South Carolina.

4. The events giving rise to this action occurred in Orangeburg County, the parties have sufficient connection to Orangeburg County, and jurisdiction is proper.

5. Plaintiff requests a jury trial on all legal claims and issues.

ELECTRONICALLY FILED - 2023 Apr 20 4:14 PM - ORANGEBURG - COMMON PLEAS - CASE#2023CP3800559

## FACTUAL ALLEGATIONS

6. Plaintiff began his employment with Defendant in or around 2012 as a senior technician.

7. Plaintiff was later promoted to Superintendent of wastewater plant and pump remote stations.

8. Plaintiff is a white male.

9. In 2015 Plaintiff suffered a severe injury which resulted in broken bones in Plaintiff's back. This resulted in significant and ongoing medical issues and treatment.

10. Plaintiff's supervisor for the relevant time period was Richard Labrador, wastewater director. Mr. Labrador reported to Warren Harley, Manager of DPU.

11. Harley is a black male. Labrador is, based on information and belief, a Hispanic male.

12. Plaintiff has a positive history of performance evaluations.

13. As part of his employment, Plaintiff was given the ability to use leave time for medical appointments.

14. Plaintiff regularly used his leave time to attend various doctors' appointments and receive treatment related to issues stemming from his 2015 injury.

15. At all times, Plaintiff followed all applicable rules and procedures in Defendant's workplace for taking leave time, including providing proper notice to his supervisor and all appropriate parties.

16. Beginning in August 2020, Defendant, and Harley in particular, began to target Plaintiff on account of his race and the various medical issues he was still dealing with as a result of his 2015 injury.

ELECTRONICALLY FILED - 2023 Apr 20 4:14 PM - ORANGEBURG - COMMON PLEAS - CASE#2023CP3800559

17. Defendant, and Harley in particular, began to repeatedly question Plaintiff's use of leave time to address his medical issues.

18. On two occasions when Plaintiff took leave to deal with medical issues, Harley arrived at Plaintiff's workplace to interview Plaintiff's minority subordinate. The purpose of these interviews was to find any kind of fault in the Plaintiff's job performance.

19. Harley did not target or treat comparable minority and/or non-disabled employees in this manner.

20. Harley accused Plaintiff of not providing proper notice of Plaintiff's leave time to Plaintiff's minority subordinate employee.

21. There is no policy requiring or otherwise any reason for Plaintiff to inform such minority subordinate employee of his leave usage.

22. Nevertheless, Plaintiff kept a calendar reflecting his leave usage in his office that any of his subordinates would have been free to view if needed. Moreover, Plaintiff was accessible by cell phone even when he was out of the office.

23. Plaintiff complained to his supervisor that he was being unfairly targeted by Harley.

24. In September of 2020, while dealing with medical ailments stemming from his back injury, including what Plaintiff would later learn to be Polymyalgia Rheumatica, Plaintiff was given a pretextual writeup.

25. Based on information and belief, the writeup contained no specific allegation of any incident in which Plaintiff failed to perform his job to an acceptable standard.

26. Based on information and belief, the writeup contained allegations which amount to false generalities about Plaintiff's work.

ELECTRONICALLY FILED - 2023 Apr 20 4:14 PM - ORANGEBURG - COMMON PLEAS - CASE#2023CP3800559

27. In September of 2020, after the pretextual writeup, immediately upon returning from leave for a significant surgery, Plaintiff was given an additional verbal reprimand.

28. This verbal reprimand was also based on false allegations.

29. Plaintiff again complained to Defendant that he was being unfairly targeted, discriminated against, and retaliated against on account of his disability.

30. Harley regularly held black and minority employees to a different and more lenient standard than comparable white employees.

31. In the Fall of 2020, Plaintiff was asked to make a hiring decision related to an operator position.

32. Harley and Defendant's officials pressured Plaintiff to hire a less qualified black candidate.

33. Instead, Plaintiff chose to hire the more qualified white candidate. The white candidate, unlike the black candidate, fulfilled the listed requirements of the position.

34. Throughout Plaintiff's time in Defendant's workplace, Harley and Defendant officials consistently took minority employees at their word regarding allegations against Plaintiff and other white employees. Harley and Defendant did not take Plaintiff or other white employees at their word.

35. Harley and Defendant's officials would regularly take adverse employment actions against Plaintiff and other white employees, based on the unproven allegations of minority employees, without speaking to the white employees at issue.

36. Harley and Defendant have consistently selected minority candidates for employment at a disproportionate rate when compared to similarly or more qualified white candidates.

ELECTRONICALLY FILED - 2023 Apr 20 4:14 PM - ORANGEBURG - COMMON PLEAS - CASE#2023CP3800559

37. In or around February or March of 2021, Plaintiff was out on leave as a result of stomach ulcers and other health issues.

38. While Plaintiff was on medical leave, Harley again arrived at Plaintiff's workplace to interview Plaintiff's subordinates, seeking out faults with Plaintiff's performance.

39. Plaintiff was told by Ryan Ethridge, Collections Superintendent and Acting Director of Wastewater Department, that Plaintiff was "under the gun" by Defendant, that everything Plaintiff did would be scrutinized, and that Ethridge "could not protect" Plaintiff.

40. Upon return, Plaintiff questioned why Harley had come to seek out issues with Plaintiff's work.

41. Harley responded by again questioning and complaining about Plaintiff's attendance and leave time, which Plaintiff had been using to attend his medical appointments.

42. Shortly thereafter, Defendant's HR arrived at Plaintiff's workplace to again interview Plaintiff's subordinates, searching for faults in Plaintiff's performance.

43. Plaintiff questioned Defendant's HR on their arrival.

44. Defendant's HR claimed that "this will not be a witch hunt" and said they were going to interview employees and ask if there were problems in the plant. However, it later became apparent to Plaintiff that this was indeed a "witch hunt" to seek out negative complaints to use against Plaintiff.

45. In April of 2021, Plaintiff was told by Defendant that he had three options: 1) resign, 2) go on a Performance Improvement Plan, or 3) be terminated.

46. Defendant's management instructed Plaintiff that should he elect to go onto a Performance Improvement Plan, Defendant would not "pass" Plaintiff on the plan, regardless of Plaintiff's performance.

ELECTRONICALLY FILED - 2023 Apr 20 4:14 PM - ORANGEBURG - COMMON PLEAS - CASE#2023CP3800559

47. Plaintiff thus refused to go on a Performance Improvement Plan and declined resignation.

48. On April 19, 2021, Plaintiff's employment was terminated.

49. Defendant used false allegations that Plaintiff had not followed procedure related to attendance and leave time as pretextual grounds for Plaintiff's termination.

**FIRST CAUSE OF ACTION**
**(Title VII Race Discrimination)**

50. Plaintiff realleges the foregoing where consistent.

51. Plaintiff is a member of a protected class based on his race.

52. Plaintiff met or exceeded the legitimate performance expectations of his job.

53. Plaintiff was held to a stricter standard than his black and minority peers.

54. Plaintiff was subjected to harassment, disparate treatment, and a racially hostile work environment as a result of the discriminatory and harassing behavior that his supervisors engaged in and permitted because of his race.

55. Plaintiff suffered harassment, disparate terms and conditions of employment, hostile work environment, and pretextual termination. These adverse employment actions were motivated by his race in violation of Title VII.

56. The above actions amount to unlawful race discrimination prohibited by Title VII of the Civil Rights Act of 1964, The Civil Rights Act of 1991 and amendments thereto and is the proximate cause of the Plaintiff's loss of earnings, loss of prospective earnings and benefits, embarrassment, humiliation and mental anguish, personal injury, and mental suffering for which the Plaintiff is entitled to the awards of actual damages as well as reasonable attorney's fees and costs of this proceeding.

ELECTRONICALLY FILED - 2023 Apr 20 4:14 PM - ORANGEBURG - COMMON PLEAS - CASE#2023CP3800559

**SECOND CAUSE OF ACTION**
**(Title VII Retaliation)**

57. Plaintiff realleges the foregoing where consistent.

58. Plaintiff engaged in protected activities when he complained of race discrimination, including disparate treatment, harassment, and hostile work environment. Plaintiff further engaged in protected activities when he opposed racially discriminatory hiring practices.

59. Defendant and its relevant decisionmakers were on notice of Plaintiff's protected activities when it took adverse employment action against Plaintiff.

60. Plaintiff suffered harassment, hostile work environment, disparate terms and conditions of employment, and pretextual termination. These adverse employment actions were because of Plaintiff's protected activities under Title VII.

61. The above amounts to unlawful retaliation prohibited by Title VII of the Civil Rights Act of 1964, The Civil Rights Act of 1991 and amendments thereto and is the proximate cause of the Plaintiff's loss of earnings, loss of prospective earnings and benefits, embarrassment, humiliation and mental anguish, personal injury, and mental suffering for which the Plaintiff is entitled to the awards of actual damages as well as reasonable attorney's fees and costs of this proceeding.

**THIRD CAUSE OF ACTION**
**(ADA Discrimination)**

62. Plaintiff realleges the foregoing where consistent.

63. Plaintiff is disabled within the meaning of the ADA.

64. Defendant knew of Plaintiff's disability.

65. Plaintiff is, and at all times relevant hereto was, qualified to do the job he was hired for with or without reasonable accommodation.

ELECTRONICALLY FILED - 2023 Apr 20 4:14 PM - ORANGEBURG - COMMON PLEAS - CASE#2023CP3800559

66. Plaintiff performed his position at or beyond expectation for the duration of his employment.

67. Plaintiff was subjected to scrutiny that no other non-disabled employee was subjected to.

68. Plaintiff was faulted for using properly earned and used sick leave for treatment related to his disabilities.

69. Plaintiff was issued pretextual writeups and was ultimately terminated on April 19, 2021.

70. Defendant's alleged reasons for the writeups and termination are false and amount to pretextual excuses for unlawful disability discrimination.

71. For the conduct alleged herein, Defendant has directly and proximately caused and is liable for all damages resulting from Defendant's discriminatory behavior, including: back pay, front pay, back benefits, front benefits, diminished earning capacity, pain and suffering, embarrassment, shock, humiliation, mental suffering, and emotional distress. Plaintiff is also entitled attorney's fees in accord with federal laws, and Plaintiff is entitled to injunctive relief. Plaintiff last requests and is due pre-judgment interest on all damages recovered and all other remedies available under the law.

72. Such conduct by the Defendant was also willful and wanton, and Plaintiff is entitled to punitive or liquidated damages for the same.

## FOURTH CAUSE OF ACTION
## (ADA Retaliation)

73. Plaintiff realleges the foregoing where consistent.

74. As alleged above, Plaintiff engaged in good faith protected activity throughout his employment. Specifically, but not limited to, reporting unfair treatment, discrimination, and

ELECTRONICALLY FILED - 2023 Apr 20 4:14 PM - ORANGEBURG - COMMON PLEAS - CASE#2023CP3800559

retaliation on account of his disability from Harley to Defendant's upper management; taking of leave for medical treatment related to his disabilities; and challenging Harley's pattern of seeking negative information against Plaintiff when Plaintiff was out for medical treatment.

75. In retaliation, Defendant issued Plaintiff pretextual writeups, attempted to put Plaintiff on a Performance Improvement Plan that Defendant admitted Plaintiff would not ever "pass," and ultimately terminated Plaintiff's employment.

76. Defendant's alleged reasons for the writeups, the Performance Improvement Plant, and the termination are pretext for unlawful retaliation.

77. Defendant violated the ADAAA anti-retaliation provision.

78. As a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, physical injuries, loss to professional standing, character, and reputation, and further seeks attorney's fees and costs, and prejudgment interest, as well as any other relief available under the law.

79. Defendant's actions as set forth above were willful and wanton; therefore, Plaintiff is entitled to recover punitive damages from Defendant.

## PRAYER FOR RELIEF

Plaintiff seeks judgment against the Defendant in an amount equal to the sum of his actual damages, to be determined by a jury, together with an award of reasonable attorney's fees and costs of this action. Plaintiff also seeks an award of consequential and other damages within the jury's discretion, and for treble and punitive damages where legally recoverable. Last, Plaintiff seeks any equitable relief that this Honorable Court deems just and proper.

ELECTRONICALLY FILED - 2023 Apr 20 4:14 PM - ORANGEBURG - COMMON PLEAS - CASE#2023CP3800559

**CROMER BABB PORTER & HICKS, LLC**

BY: *s/Chance Sturup*
Julius W. Babb, IV (#77216)
jay@cbphlaw.com
Chance Sturup (#105647)
chance@cbphlaw.com
1418 Laurel Street, Ste. A (Street Address)
Post Office Box 11675
Columbia, South Carolina 29211
Phone: 803-799-9530

***Attorneys for Plaintiff***

April 20, 2023
Columbia, South Carolina